In the Supreme Court of Georgia

Decided:    June 2, 2014

S14A0530.  HAMILTON v. THE STATE.

HINES, Presiding Justice.

Carlos Donta Hamilton appeals his convictions and sentences for malice murder and possession of a firearm during the commission of a felony, both in connection with the death of Dwytree Parrish.  For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Hamilton's sister, Marshander  Hamilton ("Marshander"), previously had a romantic

[1] The crimes were committed on June 21, 2008.  On November 2, 2010, a Fulton County grand jury indicted Hamilton for malice murder, felony murder while in the commission of the crime of aggravated assault, felony murder while in the commission of the crime of possession of a firearm by a convicted felon, aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon.  Hamilton was tried before a jury November 8-15, 2010, and found guilty of all charges.  On November 15, 2010, Hamilton was sentenced to life in prison for malice murder and a consecutive term of five years in prison for possession of a firearm during the commission of a felony; the remaining convictions either merged with a crime for which a sentence was entered or were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4) (5) (434 SE2d 479) (1993).  Hamilton moved for a new trial on November 23, 2010, and amended the motion on August 23, 2012.  On December 5, 2012, the motion, as amended, was denied.  On December 12, 2012, Hamilton filed a notice of appeal; the appeal was docketed in this Court for the January 2014 term and submitted for decision on the briefs.

relationship with Terence Stocks. Stocks later telephoned Marshander, and she accused Stocks and Parrish, a friend of Stocks, of breaking into her home and stealing money. Stocks denied these accusations and stated that neither he nor Parrish played any part in the burglary. That same day, Stocks telephoned Parrish and reported the earlier conversation he had with Marshander. Stocks planned to meet with Parrish later that evening, but before doing so, Stocks went to Hamilton's house, where he knew Marshander to be, to try to allay any suspicion that he was responsible for the burglary. Marshander seemed skeptical of Stocks's denials, and when Hamilton arrived at the home, he first questioned Stocks on the matter, and suggested that he and Stocks get some alcohol. After drinking beer and smoking marijuana with Stocks, Hamilton told him that he wanted to speak with Parrish.

Hamilton drove Stocks to a store, where they saw Parrish exit the store. Stocks and Parrish spoke about their plans for the evening. Hamilton offered to give Stocks and Parrish a ride, and drove them to another store, where Stocks went inside to purchase smoking materials; when he exited the store, there was a group of 15 to 20 persons near the car. Hamilton took a pistol from the car's trunk, placed Parrish in a headlock, and accused him of breaking into

2

Marshander's home. Hamilton struck Parrish on the top of the head with the pistol, spoke angrily to him, and shot him once in the chest. Stocks ran from the area, looked back, and saw members of the surrounding group striking Parrish.

An off-duty law enforcement officer near the scene of the shooting heard the gunshot and arrived at the scene shortly thereafter; he saw a large group of people, who quickly fled. Parrish was taken to a hospital where he identified himself to a police officer and stated that he was with his friend "T" when an African-American male approached him, accused him of breaking into the home of the male's sister, and then shot him. Parrish later died of the gunshot wound.

After Stocks ran from the scene of the shooting, he went to Hamilton's house, and reported the incident to Marshander, who told him to be quiet about it so that Hamilton's wife did not learn of it. Hamilton later arrived in the car and placed what appeared to be a handgun in a shed; he denied having shot the pistol.

Before trial, a handwritten letter was sent to Parrish's family purportedly authored by "Terrence Stocks, J.R.," naming the writer as the shooter, and specifically denying that Hamilton had anything to do with the shooting. At

3

trial, evidence was introduced showing that Stocks spells his first name "Terence" and uses the suffix "II" rather than "Jr." Handwriting comparison analysis indicated that the letter was written by the same person who wrote letters purportedly authored by Hamilton and sent to the trial judge, on which Hamilton's fingerprints appeared; a sample of Stocks's handwriting was obtained and did not match that on the letter sent to the Parrish family.

1. Hamilton contends the evidence against him was insufficient to prove beyond a reasonable doubt that he was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). Hamilton notes that, although eyewitness Stocks testified at trial that Hamilton was the shooter, he was impeached by a prior inconsistent statement in which he stated that the shooter was an unknown African-American male. However, Stocks also testified that he was initially reluctant to reveal the identity of the shooter for fear of retribution, possibly including being killed. And, "[w]hen this Court reviews the sufficiency of the evidence, it does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence. [Cit.]" *Greeson v. State*, 287 Ga. 764, 765 (700 SE2d 344) (2010). The jury

4

was authorized to accept Stocks's trial testimony. Id. See also *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).

Hamilton also points to certain aspects of the physical evidence presented by the State, and contends this evidence was not conclusive of his guilt. However, the fact that fingerprint evidence did not tie Hamilton to the letter sent to the Parrish family that claimed to be written by Stocks, but did tie him to other letters written in the same hand as the letter to the Parrish family was merely one matter for the jury's assessment, as was the fact that the projectile taken from Parrish's body could not definitively be matched to the cartridge casing found at the crime scene. To the extent that Hamilton argues that the State presented only circumstantial evidence that did not exclude all reasonable hypotheses except that of his guilt, see former OCGA § 24-4-6,[2] there was direct evidence against him in the form of Stocks's testimony that he saw Hamilton fire the pistol at Parrish, and saw Parrish fall. See *Evans v. State*, 275 Ga. 672, 673 (1) (571 SE2d 780) (2002). In any event,

> [q]uestions as to the reasonableness of hypotheses are generally to
> be decided by the jury which heard the evidence and where the jury

---

[2] Former OCGA § 24-4-6 was effective at the time of Hamilton's trial. See also OCGA § 24-14-6, which became effective January 1, 2013.

5

is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, that finding will not be disturbed unless the verdict of guilty is insupportable as a matter of law.

*Rogers v. State*, 290 Ga. 18, 23 (4) (717 SE2d 629) (2011) (Citations and punctuation omitted.)  The evidence in this case authorized the jury to find Hamilton guilty beyond a reasonable doubt of all of the crimes of which he was convicted.  See *Jackson*, supra.

2.  Hamilton contends that the trial court erred in denying his objections to Stocks's testimony that Hamilton had drunk beer, appeared inebriated, and smoked marijuana shortly before declaring that he wanted to find Parrish and speak with him.  Although Hamilton contends this testimony constituted improper comment upon his character, "evidence as to whether a defendant was under the influence of alcohol or drugs at the time a crime was committed is deemed part of the res gestae and is admissible as such even though it may incidentally place the defendant's character in evidence. [Cit.]" *Cunningham v. State*, 279 Ga. 694, 695 (3) (620 SE2d 374) (2005).

Judgments affirmed.  All the Justices concur.