In the Supreme Court of Georgia

Decided:  September 22, 2014

S14A0962.  GILL v. THE STATE.

BENHAM, Justice.

Appellant Ahmad Rashad Gill was convicted of malice murder and other

related crimes involving the shooting of a security guard working at a strip club

in the early morning hours of November 21, 2010.[1]  He appeals, alleging the

evidence was insufficient to support his convictions and alleging he was denied

effective assistance of trial counsel.   For the reasons set forth herein, we affirm.

Viewed in the light most favorable to the verdict, the trial evidence

---

[1]  The crimes occurred on November 21, 2010.  On February 22, 2011, a DeKalb County grand jury returned an indictment charging appellant with malice murder, felony murder (aggravated assault), aggravated assault of victim Christopher Long, possession of a firearm during the commission of a felony, and four additional counts of aggravated assault upon other victims. Appellant was tried December 5-9, 2011.  The trial court granted a directed verdict on the aggravated assault counts relating to victims Marc Koger and Ashley Black.  The aggravated assault counts relating to victims Sabrina Feldner and Leah Holmes were disposed of by order of nolle prosequi. A jury found appellant guilty on all remaining counts. The conviction for felony murder was vacated as a matter of law and the conviction for the aggravated assault of Christopher Long merged with the murder conviction, and appellant was sentenced to life imprisonment as to the murder conviction, and five years to serve consecutively for the possession of a firearm conviction.  Appellant filed a timely motion for new trial which was later amended.  After an evidentiary hearing on July 5, 2013, the trial court denied appellant's motion for new trial by order dated August 5, 2013.  Appellant filed a timely notice of appeal on August 13, 2013, and the case was docketed in this Court to the April 2014 term for a decision to be made on the briefs.

showed Gill and two friends visited the club earlier in the evening, and security guards asked the men to leave because Gill was inappropriately touching the dancers. Gill became irate at being asked to leave, a commotion ensued, and the manager became involved. After a short scuffle, Gill was removed. Once he was outside, the scuffle continued and Gill stated he would return and made death threats to the security guards and manager. Gill returned to his girlfriend's mother's house where he was living and where several others were staying that night, put on a "hoodie"-type jacket, and retrieved a handgun. About an hour after leaving the club, Gill returned, driving his girlfriend's mother's green SUV. He walked inside, pulled out a gun, and fired eight shots at guard Christopher Long who died on the premises from his wounds. Investigators recovered Gill's driver's license from the scene. Witnesses interviewed by police investigators identified Gill from a photographic line up as the club patron who had been involved in a fight earlier in the evening before the shooting, and at trial, an eyewitness identified Gill as the shooter. When questioned by the police after his arrest, Gill admitted he was at the club and was involved in the initial fight upon being asked to leave. He further stated he believed it was during this scuffle when he dropped his identification. Gill

2

denied he came back to the club after he was asked to leave and denied he was the shooter, but he refused to answer any further questions.

1. Gill first asserts the evidence was insufficient to support a conviction. This argument is premised upon his claim that the evidence against him was speculative and impermissibly circumstantial. That is not the case. The eyewitness who testified at the trial and identified Gill as the shooter was a dancer at the club. She not only remembered Gill from an earlier visit he made to the club prior to the date of the shooting, but testified that she had been within inches of Gill's face when he was in the club earlier in the evening of the shooting when she danced for him, and that he inappropriately pulled her toward him. She testified that she never forgot the face of a patron she had danced for because, in her business, she needed to remember who "took good care of [her]" and who behaved inappropriately so that she knew to stay away from them. She testified that one of the reasons she remembered Gill was that "his eyebrows were bushy." She testified that she was about thirty feet away from the victim who was shot, had a direct line of sight at the shooter, and recognized him as Gill. She described how the shooter was holding a small gun straight out in front of him as he entered the club. Several shots were fired, and she witnessed

3

two of them before she hit the ground and saw the victim fall. The eyewitness testified Gill did not have on the same clothes as those he was wearing when she danced for him earlier in the evening, but was wearing a dark colored "hoodie"-type jacket. At trial, Gill's counsel attempted to impeach the credibility of the eyewitness by establishing she had consumed up to three alcoholic beverages during the course of the evening and by focusing on her location at the time of the shooting in relation to the position of the shooter. Assessing witness credibility, however, is the province of the jury, not this Court. *Garey v. State*, 273 Ga. 133, 137 (3) (539 SE2d 123) (2000); *Hampton v. State*, 272 Ga. 284, 285 (527 SE2d 872) (2000).

The State also presented circumstantial evidence that corroborated the eyewitness testimony. Two dark colored hoodie jackets were recovered from Gill's residence at the time he was arrested later in the day of the early-morning shooting. A surveillance videotape from the club showed the shooter wore a hoodie jacket that appeared to be dark in color. It also showed the shooter was wearing a bracelet that appeared to be a white rubber bracelet. When he was arrested, Gill was wearing a white "Livestrong"-type rubber bracelet. The videotape of the shooting was played to the jury, and although the State

4

concedes the face of the shooter cannot be seen in the video, it reflected other facts that corroborated the eyewitness testimony identifying Gill as the shooter.

Additionally, evidence was presented that, upon returning to his place of residence after he was engaged in the fight at the club, Gill had access to an SUV that matched the description of one captured on videotape arriving in the club parking lot just before the shooting. One of the trial witnesses, who testified she spent the night at the same residence where Gill was staying on the night of these events, acknowledged that, when the police took her statement within a few days after the events, she told them she had seen Gill reach under a bed or a dresser and retrieve a small silver handgun. The evidence established that this residence, where Gill claimed in his statement to police that he stayed all night after returning from the club, was only a six- to seven-minute drive from the club. Gill was arrested on November 24, 2010, at the home of one the companions who accompanied him on his first visit to the club. That friend testified that Gill told him he knew the authorities were looking for him and that he intended to turn himself in to police. When the authorities arrived with a warrant to arrest Gill, Gill attempted to avoid arrest by breaking through the attic space into the adjoining townhouse.

To refute the evidence against him, Gill points to testimony of certain witnesses who spent the night at his place of residence on the evening in question attesting that Gill was at that house when they went to sleep and was there when they awoke the next morning. No testimony was presented, however, that Gill did not leave the residence for the remainder of the night. Even if such testimony had been presented, when reviewing the sufficiency of the evidence, this Court "does not re-weigh the evidence or resolve conflicts in witness testimony, but instead it defers to the jury's assessment of the weight and credibility of the evidence." (Citations and punctuation omitted.) *Hamilton v. State*, 2014 WL 2451377, ___ Ga. ___, ____ (1) ( ___ SE2d ____) (June 2, 2014). The inquiry conducted by this Court is to determine whether the evidence is sufficient to permit a rational trier of fact to find the appellant guilty beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560 (1979). Having reviewed the evidence pursuant to this familiar standard, we conclude it was sufficient to sustain the convictions.

2. Gill next asserts his convictions must be reversed because he received ineffective assistance of counsel because trial counsel failed to request and secure video footage of the earlier altercation between Gill and employees of the

6

club.  The State's theory was that Gill became irate and belligerent when he was asked to leave the club and that he threatened the lives of the employees of the club, thus providing the motive for the shooting.  Testimony showed the club had video camera coverage of the entire crime scene, including the parking lot, front door, and certain areas of the exterior of the club.  Video footage of the prior altercation existed (though it no longer existed at the time of trial) and the investigating officer testified at the preliminary hearing that he reviewed such footage, but the record shows neither the officer nor any other person acting on behalf of the State obtained a copy of it.  During the trial, Gill complained to the judge that he had requested his counsel to obtain the footage but that counsel failed to do so.  At the hearing on Gill's motion for new trial, trial counsel testified that not having video footage of the fight was part of his trial strategy. Trial counsel testified he did not think the footage would be helpful to the defense, that he was "personally satisfied" not to have the footage, and that he did not want the tape so he could argue during closing, as he did, that the State's failure to find the tape of the fight was a basis for reasonable doubt.  Although counsel did not know, without first reviewing it, whether footage of the fight was inculpatory or exculpatory, it is undisputed that it would have shown the

7

fight, which, according to the State, provided the motive for the shooting. The judge at the motion for new trial hearing, who was also the trial judge, noted that obtaining the footage would likely have triggered a requirement that it be produced to the State, thus creating a risk that such a request would result in providing the State with inculpatory evidence that would have bolstered the State's case.

"To prevail on a claim of ineffective assistance of counsel, an appellant must prove both deficient performance of counsel and prejudice from the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984)." *Bell v. State*, 294 Ga. 443, 445 (2) (754 SE2d 327) (2014). "To prove that the performance of his lawyer was deficient, [Gill] must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances, and in the light of prevailing professional norms. . . ." (Citations and punctuation omitted.) *Powell v. State*, 291 Ga. 743, 746 (2) (b) (733 SE2d 294) (2012).

With respect to the issue of performance, when reviewing ineffective assistance of counsel claims, this Court applies a strong presumption that counsel's performance falls within the wide range of reasonable professional

assistance. See *Ford v. State*, 290 Ga. 45, 47-48 (5) (717 SE2d 464) (2011) (citing *Strickland v. Washington*, supra). "[A] decision amounting to reasonable trial strategy does not constitute deficient performance." *Harris v. State*, 279 Ga. 522, 529 (6) (615 SE2d 532) (2005). Instead, matters of trial tactics provide grounds to find counsel ineffective "only if the tactical decision is so patently unreasonable that no competent attorney would have chosen it." *McKenzie v. State*, 284 Ga. 342, 347 (4) (b) (667 SE2d 43) (2008). Gill's trial counsel testified and offered his reasons for the strategic decision not to seek the video footage at issue. Gill failed to demonstrate this decision was patently unreasonable, and thus he has failed to establish that his trial counsel provided constitutionally deficient assistance of counsel.

Because both the "deficient performance" prong and the "prejudice" prong of the *Strickland* test must be met, having found that Gill failed to satisfy the deficient performance prong, this Court is not required to examine the other prong of the test. See *Johnson v. State*, 2014 WL 2924869, ____ Ga. ____ (3) (____ SE2d ____) (June 30, 2014). This enumeration of error fails. The trial court's order denying the motion for new trial is affirmed.

Judgment affirmed. All the Justices concur.

9