297 Ga. 99
FINAL COPY

S15A0370.  McLEOD v. THE STATE.

Benham, Justice.

Appellant Jennifer Renay McLeod was convicted for the murders of Harold Reese, Jr., and Jerry Lee Lawrence, along with related crimes.[1] Viewing the evidence in the light most favorable to the verdict, it shows appellant effectively served as "bait" to entice a person she believed to be a drug dealer

---

[1] The crimes occurred on August 26, 2009.  On November 9, 2009,  a Crisp County grand jury returned an indictment charging appellant with two counts of malice murder, two counts of felony murder (aggravated assault), two counts of kidnapping with bodily injury, two counts of aggravated assault, and arson in the first degree.  After a jury trial conducted May 23-26, 2011, the jury returned a verdict of guilty on all counts.  On May 26, 2011, the trial court sentenced appellant as follows: The trial court sentenced appellant to two life sentences to be served concurrently for the two malice murder convictions; imprisonment for a term of twenty-five years for the kidnapping conviction relating to victim Lawrence, to be served consecutively to the life sentences; imprisonment for a term of twenty-five years for the kidnapping conviction relating to victim Reese, to be served concurrently with the sentence for kidnapping of victim Lawrence; and imprisonment for a term of twenty years for the conviction  for arson in the first degree, to be served consecutively with the life sentences for malice murder, and concurrently with the sentences for kidnapping.  The remaining counts were merged or vacated by law. Appellant's trial counsel filed a timely motion for new trial on June 10, 2011.  After a hearing on August 8, 2013, the trial court denied the motion by order dated August 14, 2013.  Appellant filed a timely notice of appeal on September 12, 2013.  The appeal was docketed in this Court on July 7, 2014, as Case No. S14A1582.  Appellant filed a motion in the original appeal to remand to the trial court so that additional claims of error could be asserted. By order dated July 28, 2014, this Court remanded the case to the trial court for consideration of appellant's claims of ineffective assistance of trial counsel.  On August 19, 2014, appellant's appellate counsel filed in the trial court a motion for new trial on remand.  After a hearing on said motion on September 11, 2014, the trial court denied the motion by order dated September 23, 2014. Appellant filed a timely notice of appeal on October 9, 2014, and the case was docketed to the January 2015 term of this Court for a decision to be made on the briefs.

who carried money on him to come to her home on the pretext of having a sexual encounter. In fact, she was setting him up to be robbed by her two co-conspirators — her live-in boyfriend Amin Dennis, and Amin's brother, Corey Dennis.

On the evening of August 25, 2009, appellant and the two Dennis brothers drove to a gas station where they noticed Reese. Believing that Reese was a drug dealer who had money, they agreed to rob him. At the gas station, appellant spoke to Reese and obtained his phone number. The trio agreed to a plan by which appellant would call Reese to entice him to come to her residence, and when Reese arrived Amin and Corey would rob him. After appellant called Reese several times and Reese stated he was coming to appellant's home, Amin and Corey hid in the back of the home, where Amin was armed with a .380 semiautomatic pistol and a .38 snub-nosed revolver, and Corey was armed with a .22 handgun. Once Reese arrived at the house, appellant signaled Amin and Corey, and they came out from their hiding place and subdued Reese, binding his wrists and ankles with black zipties, and placing duct tape around his mouth and neck. While doing this, the brothers wore latex gloves. As appellant sat nearby, the brothers took approximately $1,500 from Reese, along with

marijuana, a cell phone, and keys. Amin went to Reese's vehicle which was parked outside the residence and removed certain electronics. Upon entering the vehicle, they discovered Lawrence, who was so intoxicated that he did not require restraint.

The two brothers placed the restrained Reese in the back seat of Reese's vehicle along with Lawrence. Corey kept his gun at the ready while Amin drove Reese's vehicle to a cotton field. Appellant followed in her own vehicle and remained inside it. When the parties arrived at the field, Lawrence got out of the vehicle, and Amin held a gun to Lawrence while he demanded money from Reese. Amin shot Lawrence and killed him. Reese ran out of his vehicle into the field and Amin chased after him, while appellant turned her vehicle in the direction of the field, to provide light for the chase. Amin then shot Reese, killing him. The two men placed Lawrence's body in Reese's vehicle, drove it into the field, and set it on fire. The three co-indictees then drove back to appellant's house in her car, and on the way they discarded the .38 snub-nosed revolver by throwing it onto a creek bank. The trio split the money and marijuana, and Amin and Corey took the remaining weapons and the stolen electronics to hide them at their mother's house. The day following the

murders, Corey burned, at his mother's house, the clothes the three were wearing on the prior night along with a gold chain which was identified as being similar to one Reese owned. The group also burned several other items relating to the crimes in front of appellant's residence.

The victims' bodies and the burned automobile were recovered following a telephone call made to 911 concerning a burning automobile. Bullets were recovered from both bodies, and the State's expert concluded they were .38 caliber bullets fired from the same weapon, a revolver. Appellant told a friend about these events, and the friend informed authorities. Based on the information provided, the authorities uncovered a damaged revolver, either a .357 or .38 special. The authorities interviewed appellant and, after being informed of her rights, appellant admitted she lured Reese to her home for the purpose of robbery, and also disclosed that she, Amin, and Corey all burned the clothes they were wearing following the murders. Keys recovered from a burn pile in the front yard of appellant's residence fit the locks on Reese's home, another vehicle he owned, and a storage room he rented. A search of the interior of the residence revealed ties consistent with those found at the crime scene and fastened to Reese's body.

4

1. Appellant asserts the evidence was insufficient to support her convictions for the murder, aggravated assault, and kidnapping of Lawrence because she was unaware that Lawrence was in the back seat of Reese's vehicle when her accomplices entered it and drove off. Appellant claims that even though she followed the brothers in her own car to the site where these crimes were committed, no evidence was presented that she knew of Lawrence's presence or knew what the Dennis brothers were doing to him at any time before he was killed. Although the State's theory was that appellant was a party to these crimes, according to appellant the evidence was insufficient to prove either that she directly committed the crimes against Lawrence, or was otherwise "concerned in the commission of" these crimes, as required by OCGA § 16-2-20, which defines the circumstances pursuant to which a person is a party to a crime.[2]

---

[2] Pursuant to OCGA § 16-2-20:

(a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.

(b) A person is concerned in the commission of a crime only if he:

(1) Directly commits the crime;

(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;

(3) Intentionally aids or abets in the commission of the crime; or

According to the testimony of Corey Dennis, Lawrence exited the vehicle after the trio arrived at their destination, and Amin held a gun to Lawrence as he demanded money from Reese, and then killed Lawrence, in an area just off the side of the road. According to a crude drawing Corey prepared at trial during his examination, these events occurred near appellant's vehicle. Consequently, a jury could reasonably conclude from the evidence that appellant was, in fact, aware of Lawrence's presence and of his being threatened by her co-conspirators at least by the time the trio arrived at their destination. More importantly, ample evidence was presented that appellant conspired with the Dennis brothers to commit the felony of Reese's armed robbery. It has long been the law of Georgia that "[a]ll of the participants in a conspiracy are criminally responsible for the acts of each, committed in the execution of the conspiracy, and which may be said to be a probable consequence of the conspiracy, even though the particular act may not actually have been part of the plan." *Huffman v. State*, 257 Ga. 390, 391 (2) (359 SE2d 910) (1987). This criminal responsibility also applies to collateral acts of a co-conspirator, so long

_____

(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

6

as such collateral acts are reasonably foreseeable as a necessary or natural consequence of the conspiracy. See *Everritt v. State*, 277 Ga. 457, 459 (588 SE2d 691) (2003) (quoting *Pinkerton v. United States*, 328 U. S. 640, 647-648 (66 SCt 1180, 90 LE 1489) (1946) and holding that pursuant to the facts under consideration, the murder, months later, of a co-conspirator by another co-conspirator to cover up the crime was not reasonably foreseeable as a necessary, probable consequence of a conspiracy to commit arson). "Even if [appellant] did not have the specific intent that [Lawrence] be killed, the crimes which [she] did intend were dangerous ones; by their attendant circumstances, they created a foreseeable risk of death." *Parks v. State*, 272 Ga. 353, 354 (529 SE2d 127) (2000).

A common criminal intent must be proven in order to establish a defendant is a party to a crime. See *Jordan v. State*, 272 Ga. 395, 396 (1) (530 SE2d 192) (2000). Shared criminal intent, however, "may be inferred from the defendant's conduct before, during, and after the crime." (Citation and punctuation omitted.) *Thomas v. State*, 296 Ga. 485, 488 (1) (769 SE2d 82) (2015). Here, the undisputed evidence established that appellant participated in planning Reese's robbery, drove the get-away vehicle so she and her

accomplices could leave the scene of the murders, and assisted in destroying the murder weapon and other evidence relevant to the crimes. From appellant's conduct, a jury could find appellant shared a common criminal intent with the actual perpetrator of Lawrence's murder. See id. Sufficient evidence was presented from which a rational trier of fact could find appellant guilty of Lawrence's murder and the other crimes charged involving Lawrence beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Appellant also asserts the evidence was insufficient to support her convictions for the murder, aggravated assault, and kidnapping of Reese. She claims the evidence supports only the conclusion that she participated in the plan to rob Reese, but that the evidence fails to establish she was involved in a plan to kidnap, assault, and murder him. As a participant in the scheme to commit the armed robbery, however, appellant may be found criminally responsible for the acts of each of her co-conspirators that were committed in the execution of the plan which may be considered the probable consequence of the conspiracy, even if she did not specifically intend for Reese to be physically harmed. See *Huffman,* supra, 257 Ga. at 391 (2). Again, because the crimes she

did intend to commit with her co-conspirators were dangerous ones, they created the foreseeable risk of Reese's death. See *Parks*, supra, 272 Ga. at 354. Again, appellant's shared criminal intent with her co-conspirators may be inferred by her conduct before, during, and after the crimes. See *Thomas*, supra. Sufficient evidence was presented from which a rational trier of fact could find appellant guilty beyond a reasonable doubt of all the crimes against Reese for which she was tried and convicted, including murder. See *Jackson v. Virginia*, supra.

3. Appellant was charged with and convicted of arson in the first degree with respect to the burning of Reese's vehicle. The various ways in which arson in the first degree of a vehicle may be committed are set forth in OCGA § 16-7-60 (a) (2)-(5), and appellant asserts her conviction must be reversed on the ground that the indictment was defective because it failed to allege all the required elements of the crime. In fact, it was neither alleged in the indictment nor proven at trial that the vehicle was a "structure . . . designed for use as a dwelling" that was damaged without the consent of the owner or any holder of a security interest, as set forth in subsection (a) (2); that the vehicle was insured against loss or damage by fire or explosive and that it was damaged without the consent of both the insurer and the insured, as set forth in subsection (a) (3); that

9

the vehicle was damaged by fire with the intent to defeat the interests or rights of a spouse or co-owner, as set forth in subsection (a) (4); or that the vehicle was damaged by fire under such circumstances that it was "reasonably foreseeable that human life might be endangered," as set forth in subsection (a) (5). The State concedes that the indictment was defective.

It is this Court's practice in murder cases to review the record for the sufficiency of the evidence for each crime of which the appellant was convicted, pursuant to the standard set forth in *Jackson v. Virginia*. See *Redding v. State*, 296 Ga. 471, 472 (1) (769 SE2d 67) (2015). Since the evidence at trial did not prove any of the methods in which the crime of arson in the first degree of a vehicle may be committed, the evidence was insufficient to sustain the conviction, and it must be reversed and the sentence for this conviction vacated.

4. Appellant asserts her trial counsel was ineffective because he failed to move to suppress the search and seizure of damaging evidence from her car. The search warrant at issue authorized the search of the residence where appellant lived with accomplice Amin Dennis and where accomplice Corey Dennis was staying at the time of these events. It also authorized the search of two automobiles, one of which belonged to appellant. The warrant was issued

in reliance upon an affidavit filed by one of the investigating officers which provided the address of the residence and a description of it, along with identifying descriptors of the two vehicles. The affidavit set forth the reasons for believing relevant evidence of these crimes would be found at the premises, including the fact that a cousin of the two Dennis brothers had informed a fellow officer that the brothers confessed to her they had committed the crimes, that the informant identified where they lived, and that the suspects had been arrested at that address earlier in the day the affidavit was presented to the magistrate. Because, however, the affidavit did not indicate her vehicle was on the premises to be searched, and did not describe a connection between her or her vehicle and the crimes, appellant argues the affidavit was insufficient to support a search warrant for the search of her vehicle. According to appellant, the evidence shows she was not even a suspect at the time of the search since the officer to whom she gave a non-custodial statement testified at trial that he was not sure, at the time he commenced taking her statement several days after the search, if there was going to be enough evidence to arrest her at that point. Instead, appellant asserts, she was arrested only after being questioned about evidence seized from her car.

11

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Richardson v. State*, 276 Ga. 548, 553 (3) (580 SE2d 224) (2003). No such showing was made in this case. Appellant does not challenge the sufficiency of the affidavit to support the search warrant for her residence, and makes no claim that her vehicle was not parked within the curtilage of the home. Even if appellant's vehicle had not been identified in the affidavit, upon obtaining a warrant to search her residence, the authorities would have been authorized to search any vehicles found within the curtilage. "Vehicles parked within the curtilage of a dwelling to be searched pursuant to a warrant may also be searched pursuant to that warrant." (Citation and punctuation omitted.) *Solis v. State*, 268 Ga. App. 493, 498-499 (1) (c) (602 SE2d 166) (2004). See also *Brannan v. State*, 275 Ga. 70, 73 (2) (b) (561 SE2d 414) (2002); *Brooks v. State*, 237 Ga. App. 546, 548 (2) (515 SE2d 851) (1999). Because appellant failed to show a motion to suppress would have been granted, she has failed to establish prejudice by counsel's failure to file such a motion and thus has failed to establish ineffective assistance of counsel on this ground. See *Richardson*,

supra, 276 Ga. at 553 (3).

5.   At trial, the Dennis brothers' mother, Elizabeth Dennis, testified appellant confessed to her that she was present when the victims were shot, and that appellant told her the trio had taken $900 from Reese along with electronic equipment from his vehicle.  Georgia Bureau of Investigation Agent Michael Brooks testified he interviewed appellant prior to her arrest, at which time appellant told him the Dennis brothers had been angry over the fact that they had recovered "nothing but 20s" and later in the interview "only 20 something" from Reese, and that they had never shown her the stolen money or shared it with her. Agent Brooks also interviewed Ms. Dennis, and the prosecutor asked the agent whether, with respect to the amount of money stolen from Reese, appellant had told Ms. Dennis "a different story, $943?" The agent answered: "$926 maybe." Appellant asserts ineffective assistance of counsel as a result of trial counsel's failure to object to this testimony as inadmissible hearsay that was introduced to improperly bolster the testimony of Ms. Dennis and to attack appellant's credibility on a material point of her statement to the authorities.[3]

---

[3]  At the hearing on appellant's motion for new trial, appellant's trial counsel testified it did not occur to him to object on the ground of improper bolstering and that he had no strategic reason for allowing that testimony to come into evidence.

A witness's prior consistent statement is admissible if the veracity of the witness's trial testimony has been placed in issue at trial, the witness is present at trial, and the witness is available for cross-examination. [Cits.] A witness's veracity is placed in issue if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross-examination.

(Citation and punctuation omitted.) *Kidd v. State*, 292 Ga. 259, 260 (2) (736 SE2d 377) (2013). In the direct examination of Ms. Dennis, the prosecutor introduced testimony that she had been criminally charged with concealing and tampering with evidence that had been left at her home by her sons, and that those charges were later dismissed. The prosecutor asked Ms. Dennis if any promises or threats had been made to her regarding her testimony at appellant's trial. Even though appellant's counsel also cross-examined Ms. Dennis about this issue, appellant asserts the agent's testimony about Ms. Dennis's prior consistent statement is not admissible under the *Woodard* exception to hearsay

because, here, improper motive or influence was first raised in direct examination, not on cross-examination. Relying upon *Baugh v. State*,[4] appellant argues that since the agent's testimony regarding Ms. Dennis's prior consistent statement was inadmissible hearsay introduced only to bolster the witness's testimony and to attack appellant's credibility, the issue is whether testimony regarding the prior consistent statement would have been deemed inadmissible if timely raised by trial counsel. According to appellant, counsel's failure to object to this testimony demonstrates ineffective assistance of counsel since the testimony was inadmissible and would have been excluded.

Even assuming, without deciding, that the prior consistent statement at issue in this case would have been excluded if appellant's trial counsel had objected, and that trial counsel's failure to object demonstrated deficient performance, appellant has failed to demonstrate constitutionally ineffective assistance of counsel. In *Baugh*, this Court held that the erroneous admission of a witness's prior consistent statement "is reversible error if it appears likely that the hearsay contributed to the guilty verdict." (Citation and punctuation omitted.) *Baugh v. State*, 276 Ga. 736, 739 (2) (585 SE2d 616) (2003).

_____

[4] 276 Ga. 736 (2) (585 SE2d 616) (2003).

Similarly, for purposes of establishing ineffective assistance of counsel, appellant must demonstrate prejudice from the alleged deficient performance of counsel, in that but for the deficient performance, a reasonable probability exists that the outcome of the trial would have been different. See *Strickland Washington,* 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LE2d 674) (1984). Appellant has failed to make such a showing. Given the substantial evidence of appellant's guilt presented at trial, it is not reasonable to conclude that the exclusion of this evidence would have resulted in a different outcome.

Judgment affirmed in part, reversed in part, and vacated in part. All the Justices concur.

Decided May 11, 2015.

Murder. Crisp Superior Court. Before Judge Pridgen.

David J. Walker, for appellant.

Denise D. Fachini, District Attorney, Bradford L. Rigby, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General, for appellee.