**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 20, 2023**

# In the Court of Appeals of Georgia

A23A0821. RICHARDS v. THE STATE.

MCFADDEN, Presiding Judge.

After a jury trial, Christian Richards was convicted for the armed robberies of two victims (OCGA § 16-8-41) and for fleeing a police officer (OCGA § 40-6-395 (b) (5) (A)). On appeal, he challenges the sufficiency of the evidence supporting his armed robbery convictions, but the evidence, while circumstantial, authorized the jury's verdict. He also argues that he received ineffective assistance of trial counsel in several respects, but he has not shown both deficient performance and prejudice. So we affirm.

1. *Sufficiency of the evidence.*

On appeal from a criminal conviction, we view the evidence in the light most favorable to the jury's verdict and the defendant no longer is presumed innocent. When a defendant challenges the sufficiency of the

evidence supporting his criminal conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. It is the function of the jury, not the reviewing court, to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the evidence.

*Dunlap v. State*, 351 Ga. App. 685 (1) (832 SE2d 667) (2019) (citations and punctuation omitted; emphasis in original).

So viewed, the trial evidence showed that in the early morning of July 28, 2018, a Dodge Challenger drove into a parking lot and parked near where the two victims (newspaper delivery persons preparing for their routes) were talking. One of the victims, Sallie Landers, was sitting in her car, a Nissan Altima. The other victim, Joshua Mollenkamp, was standing next to Landers' car. Mollenkamp's car, a Toyota Corolla, was parked nearby with the keys inside.

A man got out of the Challenger, approached the victims, and asked them a question before pulling out a gun and pointing it at them. Another man, who was wearing a mask, also got out of the Challenger and approached the victims with a gun. A third man got out of the Challenger and jumped into the Corolla.

The masked man put the gun at Mollenkamp's back and began frisking him, and Landers got out of her car. The three men then drove away in Landers' Altima, Mollenkamp's Corolla, and the Challenger.

Mollenkamp helped Landers to a nearby bench and then, at 2:09 a. m., he called 911 to report the robbery. An emergency call immediately went out to law enforcement officers, and a few seconds after 2:18 a. m. a law enforcement officer spotted Mollenkamp's Corolla speeding down the interstate at 91 miles per hour. At 2:21 a. m., after a brief high-speed chase, law enforcement officers stopped the Corolla by causing it to crash. Richards was driving the Corolla, and the officers arrested him at the scene.

The detective who investigated the armed robberies timed the drive from the parking lot where the cars were taken to the location where the Corolla had crashed after the high-speed chase. He testified that he conducted a test-run at 11 p. m on a subsequent evening and, traveling at a speed of eighty miles per hour, it took him eight minutes to drive that distance.

The state charged Richards and two co-defendants, both individually and as parties to a crime, of the armed robberies of Mollenkamp and Landers. The co-defendants' cases were disposed of separately.

Richards argues that there is only circumstantial evidence that he was one of the three people who committed the armed robberies, which was not sufficient to support his convictions for those offenses. It is true that "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-14-6. But

> not every hypothesis is reasonable, and the evidence does not have to exclude every conceivable inference or hypothesis; it need rule out only those that are reasonable. Whether alternative hypotheses are reasonable . . . is usually a question for the jury, and this [c]ourt will not disturb the jury's finding unless it is insufficient as a matter of law.

*Garay v. State*, 314 Ga. 16, 20 (2) (875 SE2d 631) (2022) (citations and punctuation omitted).

The state presented circumstantial evidence that Richards was one of the three persons (at least two of whom were armed) who approached Mollenkamp and Landers in the parking lot and took their cars. There was evidence that Richards was apprehended while driving one of the stolen cars only twelve minutes later and that it would take a person driving eighty miles per hour at least eight minutes to travel the distance from the parking lot to the place where he was apprehended. See

4

*Strickland v. State*, 348 Ga. App. 892, 894 (1) (825 SE2d 379) (2019) (evidence of a defendant's recent possession of goods stolen in a robbery or burglary can support conviction for those crimes). There was also evidence that Richards was fleeing law enforcement at the time. See *Landers v. State*, 270 Ga. 189, 191 (5) (508 SE2d 637) (1998) ("Generally, evidence of flight . . . [is] admissible as circumstantial evidence of consciousness of guilt.").

Richards argues that the evidence does not exclude the reasonable hypothesis that he was not present in the parking lot when the cars were stolen and only received Mollenkamp's stolen Corolla from another person in the short period of time between the robberies and the high-speed chase on the interstate. (The state did not charge Richards with theft by receiving. ) In support of this argument, he points to evidence that Mollenkamp originally stated that the person who took his car was not a man with short hair (like Richards), but a woman with longer, shoulder-length hair. At trial, Mollenkamp testified that he did not get a good look at that person and had only a "general, vague impression" of them, and he testified that the person had "shorter" hair. Richards also points to evidence suggesting that Mollenkamp may have delayed calling 911 for some minutes while he assisted Landers, increasing the amount of time that elapsed between the robberies and Richards's apprehension. He notes that

5

the law enforcement officer who timed the drive from the parking lot to the crash location drove at a slower speed than Richards. And he points to evidence that there were locations in the vicinity of the robberies, such as gas stations, where he could have gotten the Corolla from someone else.

"[B]ut it was for the jury to weigh that evidence against [the] other evidence presented by the [s]tate[.]" *Strickland*, 348 Ga. App. at 894 (1). The jury's role would include weighing contradictions in a witness's description of the perpetrator. See *Lewis v. State*, 271 Ga. App. 744, 745 (611 SE2d 80) (2005). Viewing the evidence in the light most favorable to the judgment, "the jury was authorized to reject as unreasonable the alternate theoretical possibility that [in the few minutes between the robberies and the high-speed chase that ended in Richards's apprehension, he obtained the stolen Corolla from another person]." *Daniels v. State*, 298 Ga. 120, 123 (1) (779 SE2d 640) (2015).

2. *Ineffective assistance of trial counsel.*

Richards argues that he received ineffective assistance of trial counsel because his trial counsel failed to object to several instances of hearsay testimony; failed to object to improper opinion testimony from a lay witness; and failed to ask for a curative instruction after a witness opined on the ultimate issue in the case. To

6

establish constitutionally ineffective assistance, [Richards] must show that his counsel's performance was professionally deficient and that, but for such deficient performance, there is a reasonable probability that the result of the trial would have been different. See *Strickland v. Washington*, 466 U. S. 668 (III) (104 SCt 2052, 80 LE2d 674) (1984). If [Richards] fails to satisfy either prong of the *Strickland* test, this [c]ourt is not required to examine the other.

*Lane v. State*, 312 Ga. 619, 622 (2) (864 SE2d 34) (2021) (citation omitted).

(a) *Failure to object to hearsay.*

Richards argues that his trial counsel performed deficiently for not making hearsay objections when the investigating detective testified about statements made to him by the victims, who testified at trial, and by a hotel clerk and another law enforcement officer, who did not testify at trial. Richards also argues that his trial counsel performed deficiently for not making a hearsay objection when the investigating detective gave irrelevant and prejudicial testimony that was not within the detective's personal knowledge. As detailed below, even assuming that trial counsel performed deficiently in these regards, Richards has not shown that he was prejudiced, because there is no reasonable probability that the outcome of his trial would have been different had the testimony been excluded.

(i) *Testimony about the victims' statements.*

7

The investigating detective testified to what the victims had told him about the crime. This testimony was generally consistent with what Landers and Mollenkamp themselves testified to at trial, with one exception: Mollenkamp did not recall telling the detective that the person who took his car had longer hair. Richards argues that the detective's testimony was impermissible hearsay that did not qualify as either prior inconsistent or prior consistent statements under OCGA § 24-6-613.

But Richards has not shown that he was prejudiced by the allegedly erroneous admission of evidence about the victims' prior statements. As discussed above, strong circumstantial evidence was presented at trial that Richards was the person who took Mollenkamp's Corolla from the parking lot. Given that strong evidence, and the fact that Richards does not challenge the basic facts about the robberies that comprised most of the victims' testimony and prior statements, "it is not reasonable to conclude that the exclusion of [the testimony about the prior statements] would have resulted in a different outcome." *McLeod v. State*, 297 Ga. 99, 107 (5) (772 SE2d 641) (2015).

(ii) *Testimony about the statements of a hotel clerk.*

The investigating detective testified that, in the course of his investigation, the Challenger was found and searched, and hotel keycards were retrieved from it. The detective spoke with a clerk at that hotel. He testified at trial to what the hotel clerk

8

told him about the activities of a group of men and women who had rented the rooms associated with those keycards, one of whom the detective believed "possibly" was Richards. In particular, he testified that the clerk told him that other hotel guests had complained about the group and that people in the group had consistently used the back entrance of the hotel, which was not covered by a security camera.

Richards has not shown that he was prejudiced by his trial counsel's failure to object to this evidence. There was, as discussed above, "other strong evidence of [Richards's] guilt. Additionally, [the hotel clerk's] statements were not especially prejudicial. [These statements] did not directly implicate [Richards] in any crime[.] Thus, the admission of these hearsay statements was harmless[,]" *Stafford v. State*, 312 Ga. 811, 823 (5) (a) (865 SE2d 116) (2021), and so Richards "cannot establish that the failure of his lawyer to [object] to the statement[s] was prejudicial[.]" *Davidson v. State*, 304 Ga. 460, 465 (3) n. 4 (819 SE2d 452) (2018).

(iii) *Testimony about statements of another law enforcement officer.*

The investigating detective testified about information he received from another detective about the activities of the group that had been staying at the hotel. Richard argues that this trial counsel was deficient for failing to object to this testimony, pointing to an exchange during the state's direct examination of the

9

investigating detective in which he testified that the other detective told him the group had "come over" in several vehicles, that some later returned to Alabama, and that Landers' stolen Altima was recovered in Tuscaloosa, Alabama.[1] Richards was from Tuscaloosa.

Although this testimony provided a link between the armed robberies and the group of people staying at the hotel, it did not directly implicate Richards as one of the three people who actually robbed the victims in the parking lot. As with the other testimony discussed above, given the strength of the circumstantial evidence that Richards *was* one of those three people, Richards has not shown a reasonable probability that the outcome of his trial would have been different had his trial counsel objected to this testimony.

(iv) *Testimony on irrelevant and prejudicial matters outside the witness's personal knowledge.*

The investigating detective testified that the group of men staying at the hotel, including Richards, left the hotel "quite a bit" and "went all over Atlanta[,]"

---

[1] Later, during this witness's cross-examination, he volunteered other information that he had received from the Alabama detective. Richards's trial counsel objected and the trial court instructed the witness to limit his responses to only what was asked. Richards does not argue that his trial counsel performed deficiently in this respect.

specifically "to shop and purchase [decorative gold] teeth." He testified that on one such trip, the day before the robberies at issue in this case, the group "had an incident with . . . Atlanta police at the mall" and one person in the group was taken into custody. He did not explain how he came by this knowledge but nothing in his testimony suggested that he had personal knowledge of these facts.

Richards argues that his trial counsel was deficient for failing to object to this evidence as hearsay and because the potential prejudice of the evidence outweighed its probative value. But like some of the other testimony described above, this testimony does not directly implicate Richards in any crimes. It merely shows that, before the crimes at issue occurred, Richards was part of a group of people that had an interaction of some kind with law enforcement at a shopping mall. Even if this testimony placed Richards's character in issue, Richards has not shown that there is a reasonable probability its exclusion would have resulted in a different outcome, in light of the strong circumstantial evidence showing that he committed the armed robberies. See *Huff v. State*, 315 Ga. 558, 567 (5) (883 SE2d 773) (2023) (in light of strong evidence against defendant, defendant was not able to show a reasonable probability that trial counsel's objection to allegedly bad-character evidence would have led to a different result at trial).

11

(b) *Failure to object to opinion testimony from lay witnesses.*

Richards argues that his trial counsel was ineffective for failing to object to improper opinion testimony given by law enforcement officers who were not qualified as expert witnesses at trial. Lay witnesses may testify in the form of opinions or inferences only if the opinions or inferences are "[r]ationally based on the perception of the witness; . . . [h]elpful to a clear understanding of the witness's testimony or the determination of a fact in issue; and . . . [n]ot based on scientific, technical, or other specialized knowledge within the scope of [OCGA §] 24-7-702." OCGA § 24-7-701 (a). They "may draw on their professional experiences to guide their opinions without necessarily being treated as expert witnesses." *Bullard v. State*, 307 Ga. 482, 492 (4) (837 SE2d 348) (2019) (citations and punctuation omitted).

Richards points to two instances of what he characterizes as improper lay witness testimony: a law enforcement officer's testimony about Richards's hairstyle and a law enforcement officer's testimony about firearms and ammunition. As detailed below, neither constituted improper lay witness testimony and so Richards's trial counsel was not ineffective for failing to object. See *Moore v. State*, 307 Ga. 290, 298 (6) (a) (835 SE2d 610) (2019) ("the failure to make a meritless objection cannot

12

serve as a ground for an ineffective assistance claim") (citation and punctuation omitted).

(i) *Hairstyle testimony.*

Richards argues that his trial counsel should have objected to a law enforcement officer's testimony that Richard's hairstyle, which the witness had personally observed and described as a "short mini-afro," could be worn by a man or a woman. That testimony "was rationally based on [the witness's] personal observations of [Richards] and did not require scientific, technical, or other specialized knowledge, and it was relevant to an issue in [the] case — whether [Mollenkamp could have mistaken Richards for a woman when the crimes were committed]." *Moody v. State*, 316 Ga. 490, 533 (8) (c) (i) (888 SE2d 109) (2023). Moreover, evidence related to appearance is a prototypical example of permissible lay testimony. See *Bullard*, 307 Ga. at 492 (4). So Richards "has not shown that his counsel would have been successful in raising an objection to the [officer's] testimony as improper [opinion] testimony, and his ineffective assistance of counsel claim fails on this ground." *Pritchett v. State*, 314 Ga. 767, 782 (3) (a) (i) (879 SE2d 436) (2022).

(ii) *Firearms and ammunition testimony.*

13

Richards argues that his trial counsel should have objected to the testimony of the investigating detective about firearms and ammunition. The detective testified that a BB gun cannot fire nine-millimeter ammunition. He also testified about the number of rounds of ammunition certain types of firearms can hold in their magazines and the differences between "regular" nine-millimeter ammunition and hollow-point ammunition. This testimony was offered in the context of describing ammunition found by law enforcement officers in a search of the Challenger.

The detective testified that he had been a law enforcement officer for 28 years and that, during that time, he had carried all types of firearms. His discussion of ammunition and firearms "was rationally based on inferences he formed from his review of the evidence [found in the Challenger] and his prior observations [of firearms and ammunition]. . . . Moreover, this evidence was helpful to the jury in [understanding the nature of that evidence]." *Pritchett*, 314 Ga. at 781-782 (3) (a) (i) (citations and punctuation omitted). So Richards "has not shown that his counsel would have been successful in raising an objection to the [detective's] testimony as improper [opinion] testimony, and his ineffective assistance of counsel claim fails on this ground." Id. at 782 (3) (a) (i).

(c) *Failure to request a curative instruction.*

14

On direct examination, the investigating detective opined that, given the short duration between the theft of the Corolla and the crash of that car while Richards was driving it, Richards would have had to be present when the car was stolen. Richards's trial counsel objected on the ground that this testimony went to the ultimate issue in the case, and the trial court sustained the objection. Richard argues that his trial counsel performed deficiently for not also asking the trial court to give a curative instruction.

Our "current Evidence Code — unlike the former Code — does not generally prohibit lay witness testimony on 'ultimate issue' grounds." *Butler v. State*, 310 Ga. 892, 899 (3) (855 SE2d 551) (2021). See OCGA § 24-7-704 (a) ("Except as provided in subsection (b) of this Code section, testimony in the form of an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Consequently, Richards was not entitled to a curative instruction on allegedly improper "ultimate issue" testimony and he has not shown that his trial counsel was ineffective for failing to make that request.

(d) *Cumulative prejudice.*

As discussed above, we have assumed for sake of argument several alleged deficiencies of trial counsel related to the failure to object to hearsay testimony. We

15

find no cumulative prejudicial effect in these assumed deficiencies. Richards "has not demonstrated that the prejudicial effect of the assumed [deficiencies] denied him a fundamentally fair trial, given the strong evidence against him[.]" *Huff*, 315 Ga. at 568 (6).

*Judgment affirmed. Brown and Markle, JJ., concur*.