305 Ga. 712
FINAL COPY

S19A0243.  PARKS v. THE STATE.

MELTON, Chief Justice.

Following a jury trial, Michael Izells Parks, a previously convicted felon, was found guilty of malice murder, aggravated assault, cruelty to children, and various other offenses in connection with the shooting death of Lewis Anderson and pointing a gun at Tori Anderson while in the presence of a child.[1] On appeal, Parks

---

[1] On May 29, 2015, Parks was indicted for malice murder, two counts of felony murder predicated on aggravated assault and possession of a firearm by a convicted felon, three counts of aggravated assault, one count of possession of a firearm during the commission of a felony, one count of cruelty to children in the third degree, and two counts of possession of a firearm by a convicted felon. An order of nolle prosequi was entered as to one of the possession-of-a-firearm-by-a-convicted-felon counts prior to trial, and, following a July 11 - 14, 2016 jury trial, Parks was found guilty on all of the remaining counts except for one of the aggravated assault counts — a count that related to Parks allegedly pointing a gun at a different child who was also at the scene. On August 11, 2016, the trial court sentenced Parks to serve life in prison without the possibility of parole for malice murder, ten years consecutive to the malice murder count for the aggravated assault on Tori, five years consecutive to that aggravated assault count for possession of a firearm by a convicted felon, five years concurrent with the aggravated assault count for possession of a firearm during the commission of a felony, and an additional twelve concurrent months for cruelty to children. The remaining aggravated assault count relating to Lewis merged into the malice murder count for sentencing purposes, and the felony murder counts were vacated by operation of law. See *Malcolm v. State*,

contends that the evidence presented at trial was insufficient to support his conviction for malice murder and that the trial court erred in sentencing him to imprisonment for life without the possibility of parole. We affirm.

1. Viewed in the light most favorable to the jury's verdict, the evidence presented at trial revealed that, on January 28, 2015, Parks was living with his girlfriend, Maqueda Weatherby, in a government-subsidized apartment in Fulton County. Although Weatherby and her eight-year-old daughter were the only persons legally authorized to live in the apartment, brothers Lewis and Tori Anderson, Tori's girlfriend Vonteria Bradley, and Tori and Bradley's three minor children also resided in the apartment. When a government inspection of the apartment on January 28, 2015 revealed the unclean nature of Lewis and Tori's rooms, Weatherby

263 Ga. 369 (4) (434 SE2d 479) (1993). Parks filed a motion for new trial on August 17, 2016, which he amended on October 30, 2017. Following a December 12, 2017 hearing, the trial court denied the motion on December 20, 2017. Parks filed a timely notice of appeal on December 21, 2017, and his appeal was docketed to the term of this Court beginning in December 2018 and submitted for a decision on the briefs.

became fearful that she would lose the apartment, and she told Bradley that Bradley, Bradley's children, Tori, and Lewis would have to move out. Bradley then contacted the police about a "roommate dispute" with Weatherby, and, when police arrived at the apartment, Weatherby told them that she wanted Bradley and Bradley's children removed from her home. However, police informed Weatherby that she would have to "legally evict" the family and give them time to move. Around that same time, Weatherby called her adult son, Brandon Dorsey, and told him to come to the apartment to pick up her daughter because "it was about to go down" at the residence.

Soon after the police left, Lewis and Tori arrived at the apartment and began packing their belongings to prepare to move out. When Lewis went downstairs to the kitchen, Dorsey had arrived and he was in the kitchen as well, and Lewis and Dorsey got into an argument. Lewis then went back upstairs and yelled "F**k Brandon [Dorsey]! F**k Maqueda [Weatherby]! F**k Mike [Parks]," to which Parks responded by yelling, "F**k you, too!" Lewis went to the

upstairs room of Weatherby's eight-year-old daughter and yelled at her to get her brother, Dorsey, under control "before I beat his a**." Parks then went upstairs while holding a .357 magnum in his hand, said "What you say, n*****?" to Lewis, and, without Lewis attacking Parks in any way, shot the unarmed Lewis in the chest, killing him. Parks then pointed the gun at Tori and told him to "get back." Bradley pushed Tori and her children into a bedroom and begged Parks not to shoot them. Parks walked away, and Bradley called the police.

Parks eluded police for nearly six weeks until he was found in a hotel room with Weatherby and arrested.

The evidence was sufficient to enable a rational trier of fact to reject Parks's claim that he had been acting in self-defense at the time that he shot Lewis and find to him guilty beyond a reasonable doubt of malice murder and the other crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). See also, e.g., *Roper v. State*, 281 Ga. 878 (1) (644 SE2d 120) (2007) (witness credibility is for jury to decide, as is the

question of justification; therefore, jury is free to reject claim that defendant acted in self-defense).

2. Parks contends that, because the death penalty can be imposed in cases involving the crime of malice murder, the trial court erred in sentencing him to life without the possibility of parole without first considering any mitigating or aggravating circumstances that would be taken into account in a death penalty case. See OCGA § 17-10-30 (b) ("In all cases . . . for which the death penalty *may* be authorized, the judge shall consider . . . any mitigating circumstances or aggravating circumstances otherwise authorized by law[.]") (emphasis supplied). However, as this Court made clear in *Williams v. State*, 291 Ga. 19, 20 (1) (727 SE2d 95) (2012):

> Prior to April 29, 2009, a person who was convicted of murder could either be sentenced to death or life in prison with the possibility of parole. Life sentences without the possibility of parole were only imposed in those cases in which the State sought the death penalty. In 2009, the General Assembly passed Ga. L. 2009, p. 223, § 1 . . . which amended OCGA § 16-5-1 (d) to add the sentence of life in prison without the possibility of parole as one of the punishments for murder. The bill also repealed OCGA §§

17-10-31.1 and 17-10-32.1, thereby removing requirements that a jury find an aggravating circumstance before imposing the sentence of life without parole (OCGA § 17-10-31.1) and removing the sentencing duties of a judge regarding a person who pled guilty to an offense for which the death penalty or life without parole could be imposed (OCGA § 17-10-32.1).

(citations omitted). See also *Kimbrough v. State*, 300 Ga. 516, 518 n.5 (796 SE2d 694) (2017) ("In 2009, the General Assembly amended the murder statute, OCGA § 16-5-1, to authorize a sentence of life without parole for all murders committed on or after April 29, 2009."). The State did not seek the death penalty in this case, and the murder here took place after April 29, 2009. The trial court was authorized to sentence Parks to life without the possibility of parole for malice murder and was not required to recite that it considered aggravated or mitigating circumstances in doing so.

Judgment affirmed. All the Justices concur.


Decided April 29, 2019.

Murder. Fulton Superior Court. Before Judge McBurney.

Cynthia W. Harrison, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, F. McDonald Wakeford, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.