NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: March 17, 2026

S26A0047.  BUSTAMENTE v. THE STATE.

LAND, Justice.

Elias Bustamente challenges his sentences for his 2022 convictions for malice murder and other crimes in connection with the shooting death of Michael Arreola.[1] Bustamente's sole enumeration of error is that he is entitled to a new sentencing

---

[1] Arreola was killed on July 5, 2020. On January 7, 2021, a Cobb County grand jury indicted Bustamente for malice murder (Count 1), two counts of felony murder (Counts 2–3), aggravated assault (Count 4), possession of a firearm during the commission of a felony (Count 5), and possession of a firearm by a first-offender probationer (Count 6).

At a trial from July 25-28, 2022, the jury found Bustamente guilty of all charges. The trial court sentenced Bustamente to serve life in prison without the possibility of parole for Count 1, five years on probation for Count 5, and ten years on probation for Count 6, with the sentences to run consecutively. Counts 2 and 3 were vacated by operation of law and Count 4 merged with Count 1 for sentencing purposes.

On August 8, 2022, Bustamente filed a motion for new trial, which was amended through new counsel on December 13, 2024. The trial court held an evidentiary hearing on April 25, 2025, and entered an order denying Bustamente's motion for new trial on June 6, 2025. On July 2, 2025, Bustamente filed a notice of appeal. The case was docketed to the term of this Court beginning in December 2025 and submitted for a decision on the briefs.

hearing because the trial court's statement at sentencing that an apology "could seriously harm [his] appeal," paired with the trial court's enhancement of his sentence based on his "lack of remorse," violated "the Due Process provisions of the United States and Georgia Constitutions." For the reasons that follow, we affirm.

1.    The evidence presented at trial showed as follows. On July 4, 2020, Arreola's girlfriend, Margarita Gonzalez, and her family had a cookout at her apartment. Between 9:00 and 10:00 p.m., Arreola came to Gonzalez's apartment to shoot off fireworks with his daughter. Later that evening, Bustamente arrived at the apartment with two other men.

At some point during the evening, a group of men, including Bustamente and Arreola, went to the back of the property to shoot guns before returning to the porch of the apartment. Everyone was drinking alcohol. Gonzalez, who was also on the porch, testified that at some point, Bustamente pulled a gun out. Arreola told Bustamente to put the gun away, and things "escalated after that." Arreola did not have a gun. Bustamente told Arreola, "I know what

2

I'm doing" and stated that it was "his gun," and Arreola repeatedly told Bustamente to put the gun away. Bustamente became "offended" and "very angry" and repeated that he "kn[e]w what [he was] doing" and knew that the gun "was not a toy." Bustamente then "jumped up," Arreola stood up, and Gonzalez also stood up between the two men. Bustamente "glar[ed]" at Arreola, who stated "what's your deal … I have no beef with you, but … the gun isn't making you a man."

Gonzalez's mother and stepfather, who were inside the apartment, heard the argument and went outside. Gonzalez's mother yelled at Bustamente, and the couple then saw Bustamente fire his gun at Arreola. Bustamente then shot himself in the head. Gonzalez then saw Arreola "stumbl[e] back" against a wall, realized that he had been shot, and she called 911.

Smyrna Police responded to the scene; they checked Arreola for a pulse but did not find one. The cause of Arreola's death was gunshot wounds to the torso and his leg. At some point, Bustamente was taken to the hospital. Law enforcement collected a .40-caliber

3

handgun and six shell casings at the scene. During his July 14 interview with investigators, which was played for the jury, Bustamente never mentioned having to defend himself or others and never said that Arreola had a gun.

At trial, Bustamente testified on his own behalf. Bustamente testified that he drank a 24 pack of beer before the cookout and that he continued to drink at the cookout, including multiple shots of liquor. Bustamente testified that he "black[s-]out," does "obnoxious things," and "make[s] stupid decisions" when he drinks liquor. He testified that he did not "really remember what happened," but that he would not have "tr[ied] to kill somebody or tr[ried] to kill [him]self."

At the sentencing hearing, Bustamente's counsel was asked whether she had "any evidence to present" to which she answered, "[n]ot in mitigation." The trial court then engaged in the following colloquy with Bustamente about whether he intended to make a statement:

TRIAL COURT: Mr. Bustamente, listen and listen real

4

good. You can speak if you want to; okay? … You have a right to testify today. If you want to testify no one can stop you from doing so. Do you understand that? … I need an out loud answer.

BUSTAMENTE: Yes, sir.

TRIAL COURT: Okay. Likewise, you don't have to testify today if you don't want to; that is, you have a right to not testify. Do you understand that?

BUSTAMENTE: Yes, sir.

TRIAL COURT: Okay. And do you understand that it's not
your attorney that makes the final decision? You make the final decision on that. Do you understand that, sir?

BUSTAMENTE: Yes, sir.
…
TRIAL COURT: And here's the most important part: If you make a statement and you apologize, that could be viewed by an Appellate Court as an admission of guilt; okay? So when I was a Defense attorney … I would always tell my clients I'm going to advise you not to say anything. Because if you apologize, there is some case law that says that's an admission and that could seriously harm your appeal. So I would always say, Your Honor, my client would love to talk, but I've advised him if he says the wrong thing it could harm his appeal. And so I've advised him not to say anything; okay? With all of that in mind, do you want to make a statement today or not?

BUSTAMENTE: No, sir.

> TRIAL COURT: All right. [Trial Counsel], anything to add to that?
>
> TRIAL COUNSEL: No, Your Honor.

The prosecutor then argued for the "maximum" sentence, stating that that there was "absolutely no remorse" shown by Bustamente during his interview with law enforcement and that Bustamente "talked about this entire incident in such a nonchalant, matter-of-fact manner." The prosecutor also argued that Bustamente "sat here during the entire trial and never showed an ounce of remorse" and that "[h]e took the stand and didn't show an ounce of remorse … didn't even have an excuse for why this happened." In response, Bustamente's counsel argued that "due to his lack of criminal history, we are asking for the mandatory minimum, life with the possibility of parole plus five."

Before pronouncing Bustamente's sentence of life in prison without parole plus 15 years of probation, the trial court stated:

> And this was senseless. The defendant's always maintained that he was blacked out drunk and doesn't remember any of this. I don't know if he's telling the truth. He kind of seemed like he was telling the truth, but

that's not a defense. I have to admit, when I stepped on this bench, I was inclined to do one thing. But having been pointed out the lack of remorse, I'm inclined to do the other.

During the hearing on Bustamente's motion for new trial, the trial court clarified that "what [it] said about the lack of remorse, it had nothing to do with the sentencing hearing. It was his trial testimony. But mostly, to be honest with you, it was the video of his interview with the police." Bustamente did not testify. In its order denying Bustamente's motion for new trial, the trial court stated the following:

> In his amended motion for new trial, Defendant alleges he should be resentenced because this Court violated the Due Process provisions of the Constitutions of the United States and the State of Georgia in considering Defendant's lack of remorse in sentencing Defendant after the Court "advised" Defendant not to testify at the sentencing hearing. Because this Court advised Defendant not to testify at the sentencing hearing, this Court did not consider Defendant's lack of testimony at the sentencing hearing in sentencing Defendant. However, this Court properly considered Defendant's behavior and lack of remorse at trial and did not rely on any "improper considerations" in sentencing Defendant to life without parole.

2. Bustamente argues that he should be resentenced because the trial court's statement at sentencing that an apology "could seriously harm [his] appeal," paired with the trial court's enhancement of his sentence based on his "lack of remorse," violated "the Due Process provisions of the United States and Georgia Constitutions." As an initial matter, although Bustamente claims that the trial court violated his due process rights during his sentencing hearing, Bustamente makes no due process argument and cites only general statements of law regarding a defendant's right to due process under the United States Constitution. See *Apprendi v. New Jersey*, 530 U.S. 466, 466 (2000) ("The Fourteenth Amendment right to due process … entitle[s] a criminal defendant to a jury determination that he is guilty of every element of the crime with which he is charged, beyond a reasonable doubt"); *Gardner v. Florida*, 430 U.S. 349, 358 (1977) (a defendant has a "legitimate interest in the character of the procedure which leads to the

imposition of sentence"). Instead, he appears to claim that the trial court's statements to him at sentencing were improper and that the trial court erred in considering his lack of remorse during sentencing. That claim fails.

> In imposing a sentence, a trial court
>
> may consider any evidence that was properly admitted during the guilt-innocence phase of the trial, as well as the conduct and attitude of the defendant during trial. The trial court is not, in other words, limited to considering only those facts that the jury finds are proven beyond a reasonable doubt.

*Wilson*, 315 Ga. at 741 (citations and punctuation omitted). Accordingly, the trial court was permitted to consider Bustamente's "conduct and attitude," including his lack of remorse during his interview and at trial.[2] See *Blake v. State*, 273 Ga. 447, 450 (2001).

---

[2] We assume without deciding that Bustamente has preserved this argument by raising it in his motion for new trial. See *Jones v. State*, 319 Ga. 140, 147–48 n.2 (2024) (assuming without deciding that appellant preserved argument that trial court erred by failing to properly consider mitigation evidence at sentencing where appellant failed to object at sentencing and raised the issue for the first time in his amended motion for new trial). Compare *Marshall v. State*, 309 Ga. 698, 702–03 (2020) (holding that the defendant waived his alleged sentencing error where the sentence was not void and he "did not raise this claim in the trial court, either at the presentence hearing or in his motion for new trial, and his trial counsel

See also *Wilson*, 315 Ga. at 740–41 (trial court did not rely on "improper considerations" during sentencing by commenting that defendant "fail[ed] to accept and recognize his responsibility"). Here, the trial court clarified at the motion for new trial hearing and in its order denying Bustamente's motion for new trial that it did not consider Bustamente's lack of testimony or remorse at the sentencing hearing but was instead basing its decision, at least in part, on Bustamente's lack of remorse during trial and during his interview with law enforcement. Accordingly, the trial court did not rely on any "improper considerations" in sentencing him.[3] See *Wilson*, 315 Ga. at 740–41.

Although Bustamente takes issue with the trial court's

---

affirmatively waived any objection ... by stating the defense had no argument to make" about the alleged sentencing error); *Dougherty v. State*, 321 Ga. 577, 585 (2025) ("[T]o the extent that Dougherty now argues that the Georgia Constitution's due process clause required the trial court to sentence Dougherty proportionately with Lober, Dougherty did not make any such objection at sentencing, so this argument is not preserved on appeal.").

[3] Bustamente's sentence was also authorized by statute. See OCGA § 16-5-1(e)(1) ("A person convicted of the offense of murder shall be punished by death, by imprisonment for life without parole, or by imprisonment for life."); *Wilson, v. State*, 315 Ga. 728, 741 (2023) ("A defendant convicted of murder is eligible for a sentence of life without parole, regardless of whether any aggravating factors are found.").

statements to him about the perils of testifying during sentencing, nowhere does he contend that the trial court's statements caused him not to testify and there is no evidence that his failure to testify at sentencing impacted the trial court's sentence in any way. The trial court's statements during the sentencing hearing do not support Bustamente's argument that it considered his failure to testify at sentencing as evidence of his lack of remorse, and the trial court's statements during the motion for new trial hearing and in its order denying the motion for new trial confirm that it did not do so. Thus, while we agree that advice about the perils of testifying at sentencing is best given by defense lawyers and not trial judges, Bustamente has failed to show that the trial court committed any error in sentencing and as a result, his claim that his sentencing was a violation of his due process rights under the United States and Georgia constitutions has no merit.

*Judgment affirmed. All the Justices concur.*

11