**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the

# Supreme Court of Georgia

No. S26A0320
Nathan Jones
v.
The State

On Appeal from the Superior Court of DeKalb County
No. 22CR1549

Decided: June 2, 2026

BETHEL, Justice.

Nathan Jones was convicted of felony murder, based on criminal solicitation to purchase marijuana, for the death of Jordan Gratton.[1] Jones argues on appeal that the evidence was insufficient to support his conviction as a matter of constitutional

---

[1] The crimes occurred on October 21, 2018. On March 15, 2022, a DeKalb County grand jury indicted Jones for malice murder (Count 1), felony murder (Counts 2–4), aggravated assault (Count 5), armed robbery (Count 6), criminal solicitation to purchase marijuana (Count 7), and possession of a firearm during the commission of a felony (Count 8). At a September 2022 jury trial, Jones was found guilty of felony murder (Count 4) and criminal solicitation (Count 7) but was acquitted of the remaining charges. The trial court sentenced Jones to serve life in prison for felony murder and merged the criminal solicitation count.

On September 26, 2022, Jones filed a motion for new trial, which he amended through new counsel on January 15, 2025. Following a hearing, the trial court denied the motion, as amended, on June 25, 2025, but Jones failed to file a notice of appeal from that order. Jones moved for an out-of-time appeal on August 20, 2025. See OCGA § 5-6-39.1. The motion was granted on August 21, 2025, and Jones filed a timely notice of appeal on August 22, 2025. The case

due process and under OCGA § 24-14-6. But the evidence was sufficient to sustain Jones's conviction with respect to both of his claims, so we affirm.

1. The evidence presented at trial showed the following. On the afternoon of October 21, 2018, text messages were exchanged between Jones's phone and Gratton's phone. The following conversation ensued:

| | |
|---|---|
| Jones: | Yo [2:30 p.m.] |
| Gratton: | Wassup [2:30 p.m.] |
| Jones: | Yu can pull up on me [2:31 p.m.] |
| Gratton: | Yeah how much you wan [2:32 p.m.] |
| Jones: | Wat yo 7's goin for[2] [2:35 p.m.] |
| Gratton: | 50 [2:36 p.m.] |
| Jones: | Wya [2:39 p.m.] |
| Gratton: | [sends pin attachment of location] [2:39 p.m.] |
| Gratton: | Wya [2:39 p.m.] |
| Gratton: | You Tryna get it? [2:54 p.m.] |

---

was docketed to this Court's term commencing in December 2025 and submitted for a decision on the briefs.

[2] Witnesses explained that "7" is a measurement for marijuana, with customers purchasing a quarter ounce or 7 grams.

2

Jones:       Ya my fault my phone went dead [4:04 p.m.]

Jones:       I'm on flat shoal pkwy [4:04 p.m.]

Gratton:     Send yo location [4:04 p.m.]

Jones:       [sends pin attachment of location, 100 Woodberry Place] [4:12 p.m.]

Gratton:     Bet I'm finna be otw [4:15 p.m.]

Jones:       Bet [4:15 p.m.]

Jones:[sends pin attachment of location, 3653 Woodland Cove] [4:19 p.m.][3]

Jones:       Lmk wen u pullin up [4:23 p.m.]

Gratton:     Bet [4:23 p.m.]

Gratton:     I'm outside [4:48 p.m.]


Witnesses who lived on the Woodland Cove cul-de-sac (the rendezvous point identified in text messages sent from Jones's phone to Gratton's phone) heard a series of gunshots around the time the text message was sent from Gratton's phone to Jones's phone indicating that Gratton had arrived. Following the gunshots, one witness saw a Ford Mustang run over a mailbox while exiting Woodland Cove.

---

[3] The pin attachments matched the location of each party's cellular device.

3

Around 4:53 p.m., five minutes after the last text message was sent from Gratton's phone to Jones's phone, several witnesses called 911 to report that a male victim had been shot at the Woodland Cove cul-de-sac. Law enforcement responded to the scene and found Gratton dead. Gratton's body was positioned as "if somebody had thrown him out" of a car and "he landed" on his side. Gratton had been shot in the back four times—twice with 9-millimeter rounds and twice with .380-caliber rounds—and he died from those wounds. Officers recovered various 9-millimeter and .380-caliber shell casings at the scene, and subsequent analysis revealed that the casings came from a 9-millimeter Glock, a .380-caliber Glock, and at least two other unknown firearms.

Shortly after the shooting, law enforcement responded to the nearby scene of a crashed Mustang. The Mustang was subsequently discovered to belong to Gratton. Projectile defects were located on the Mustang's door, a window was broken, and a shell casing was in the floorboard near some broken glass, consistent with someone outside the driver's side of the vehicle shooting into the vehicle while the door was open.

A search of the Mustang also yielded Gratton's cell phone, a digital scale, suspected marijuana, and a shotgun and ammunition. Information on Gratton's phone revealed the text messages sent between Gratton's and Jones's phones. The last text communication from Gratton's phone was sent to Jones's phone, just prior to the shooting.

During a subsequent search of Jones's bedroom, investigators collected a digital scale and a holster made for a .380-caliber pistol. Thereafter, Jones was arrested at his school, but as officers were escorting him outside, Jones escaped their custody and fled. Officers later apprehended Jones at a family member's house.

Before Jones fled from the school, police collected his book-bag, which contained his cell phone and a receipt from a wireless provider for a charge to change a cellular telephone number, dated the day after the shooting. Cell tower analysis showed that Jones's phone was near the scene of both the shooting and the Mustang accident at the times those incidents occurred.

2. In Jones's sole enumeration of error, he claims that the evidence was insufficient, both as a matter of federal constitutional law, see *Jackson v. Virginia*, 443 US 307, 319 (1979), and state statutory law, OCGA § 24-14-6, to sustain his felony murder conviction. We address—and reject—each claim in turn.

(a) Jones first challenges the constitutional sufficiency of the evidence supporting his conviction.

> When evaluating the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the verdicts and ask whether the evidence presented at trial was sufficient to authorize a rational jury to find the defendant guilty beyond a reasonable doubt of each essential element of the crimes for which he was convicted.

*Gines v. State*, 928 SE2d 16, 27 (Ga. 2026). In the felony murder context, the State must show, among other things, that the predicate felony was both inherently dangerous and proximately caused the victim's death. *Eubanks v. State*, 317 Ga. 563, 568 (2023). Jones argues that the State failed to prove both requirements. He is mistaken. The State introduced sufficient evidence on both points to support a conviction.

First, the evidence was sufficient for a jury to conclude that Jones's criminal solicitation to purchase marijuana amounts to an

5

inherently dangerous felony. A felony is inherently dangerous when it is "dangerous per se" or "by its circumstances created a foreseeable risk of death." *Wilson v. State*, 315 Ga. 728, 733 (2023) (cleaned up). "We have recognized time and again that transactions in illegal drugs are inherently dangerous." Id. See also *Pinion-Lopez v. State*, 322 Ga. 503, 508 (2025). That is so because "violence is inherent in the business of dealing illegal drugs." *State v. Spratlin*, 305 Ga. 585, 596 (2019) (quotation marks omitted). "[I]t is among the incidental, probable consequences of an illegal drug transaction that something may go wrong and someone may be killed." *Wilson*, 315 Ga. at 734 (quotation marks omitted). That is true for conspiracy to purchase marijuana, id. at 733, and attempt to purchase marijuana, *Davis*, 290 Ga. at 757, 760–61. So too for criminal solicitation to purchase marijuana.

Second, there was sufficient evidence to authorize the jury to find that Jones's criminal solicitation to purchase marijuana proximately caused Gratton's death. The proximate cause standard is "satisfied for purposes of felony murder when the death was a reasonably foreseeable result of the criminal conduct at issue even if the death had an intervening act, so long as that intervening act was itself a reasonably foreseeable consequence of the criminal conduct." *Pinion-Lopez*, 322 Ga. at 508 (cleaned up). Proximate cause is "undeniably a jury question." *Stribling v. State*, 304 Ga. 250, 253 (2018).

Jones passingly asserts that the shooting was an "independent" and "unforeseen" intervening act that broke the chain of causation between Jones's criminal conduct—that is, his solicitation to purchase marijuana from Gratton—and Gratton's subsequent death. But as we have often said, "it is among the 'incidental, probable consequences' of an illegal drug transaction that something may go wrong and someone may be killed." *Wilson*, 315

6

Ga. at 734. See also *Eubanks*, 317 Ga. at 569 (to satisfy the proximate cause requirement for felony murder, "the death must also have been a probable or natural consequence of the criminal conduct" (cleaned up)). That is exactly what the evidence shows happened here: Jones arranged to meet with Gratton for an illegal drug transaction, the transaction went wrong, and Gratton died as a result—which was reasonably foreseeable. See *Wilson*, 315 Ga. at 734; *Pinion-Lopez*, 322 Ga. at 508–09. In short, the evidence was constitutionally sufficient to prove that Jones proximately caused Gratton's death.

Jones also argues that there was no evidence that he personally shot Gratton and that this renders the evidence of proximate cause insufficient. But a determination that Jones fired the shot that ultimately killed Gratton was not a prerequisite to the jury determining that Jones proximately caused Gratton's death. "[A] person who does not directly commit a crime may be convicted upon proof that the crime was committed and that person was a party to it." *Clark v. State*, 315 Ga. 423, 427 (2023) (quotation marks omitted). "Conviction as a party to a crime requires proof of a common criminal intent, which the jury may infer from the defendant's presence, companionship, and conduct with another perpetrator before, during, and after the crimes." Id. So, for example, when a defendant and his co-defendant both unlawfully shoot at a victim but it is unclear from the evidence who fired the shot that killed the victim, both can be convicted as party to the crime, so long as the evidence shows they shared a common criminal intent to commit that crime. Id. at 428.

Here, the evidence showed that between two and six guns were fired at the scene of Gratton's death. The evidence did not definitively show whether Jones fired a gun, much less that he fired the fatal shot. But the evidence was sufficient for the jury to

7

conclude that Jones lured Gratton to his location for the purpose of robbing him, that something went wrong in the process, that Gratton was shot, and that Jones stole and fled in Gratton's car afterward. So even assuming there were multiple shooters and that Jones was not one of them, the jury was authorized to conclude that Jones shared a common criminal intent with those shooters and that their criminal conduct proximately caused Gratton's death. See id. See also, e.g., *Collins v. State*, 312 Ga. 727, 732–33 (2021) (jury authorized to find defendant guilty of felony murder when defendant was present for planning of and helped coordinate robbery—even if defendant had no knowledge that co-defendants would bring firearms to robbery, because presence of firearms was foreseeable risk).

(b) Jones also challenges the sufficiency of the evidence under OCGA § 24-14-6, which provides that, to convict a defendant based on circumstantial evidence, "the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused." Jones claims that the evidence did not exclude other hypotheses such as an unassociated third party deciding to rob Gratton, a third party having a prior conflict with Gratton, or someone in the cul-de-sac confronting Gratton about selling drugs. This argument is unavailing.

As we have recognized, "not every hypothesis is a reasonable one, and the evidence need not exclude every *conceivable* inference or hypothesis, only the reasonable ones." *Dempsey v. State*, 323 Ga. 576, 581 (2026). "Whether alternative hypotheses are reasonable is usually a question for the jury, and this Court will not disturb the jury's finding unless it is insufficient as a matter of law." Id.

8

Here, the evidence was sufficient to support Jones's convictions as a matter of Georgia statutory law. As noted above, that evidence established that messages were sent from Jones's phone to Gratton's phone directing Gratton to a specific location and that Jones's phone was present at that location. Jones and Gratton agreed to meet for a marijuana sale, and after Gratton arrived in his Mustang, shots were fired and Gratton was killed. Someone then stole and crashed Gratton's Mustang, and Jones's phone was near the scene of the shooting and the scene of the crash at the times they occurred. Based on that evidence, the jury could infer that Jones lured Gratton to his location under the guise of purchasing marijuana, shot Gratton, and then fled in Gratton's car. And evidence that Jones changed his phone number immediately after the crimes and fled from officers when they attempted to arrest him demonstrated Jones's consciousness of guilt for the charged offenses and guilt itself. See *Jenkins v. State*, 318 Ga. 81, 89 (2022) ("[T]he fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, is admissible as evidence of consciousness of guilt for the charged offense, and thus of guilt itself." (cleaned up)). On this evidence, the jury was authorized to reject Jones's alternative hypotheses as unreasonable, and this claim fails. See, e.g., *Bradford v. State*, 323 Ga. 675, 682–84 & n.12 (2026) (sufficiency claim under OCGA § 24-14-6 failed given strong circumstantial evidence of guilt, including phone location data showing presence at scene of crime, changed phone number following crime, and attempt to hide from or elude police).

*Judgment affirmed. All the Justices concur, except Warren, P. J., not participating.*